UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TIMOTHY ISRAEL,                                    Case No. 22-11994

      Plaintiff,                                  F. Kay Behm
v.                                                 United States District Judge

TOWNSHIP OF LENOX and MARK
GRABOW in his individual and official
capacities,

      Defendants.
_____ /

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
IN PART AND DECLINING TO EXERCISE JURISDICTION OVER
<u>ALL REMAINING STATE LAW CLAIMS (ECF No. 22)</u>**

      This case is before the court on Defendants Lenox Township ("Lenox") and

Mark Grabow's ("Grabow") (together, "Defendants") motion for summary

judgment pursuant to Federal Rule of Civil Procedure 56.  (ECF No. 22).  Plaintiff

Timothy Israel, a former Plumbing and Mechanical Inspector for Defendant Lenox,

filed his complaint on August 24, 2022, alleging failure to pay wages and

retaliation in violation of the Fair Labor Standards Act (FLSA) (Counts I, II), breach

of contract (Count III), malicious prosecution (Count IV),[1] abuse of process (Count

_____

[1] It appears Plaintiff accidentally lists both his breach of contract claim and his malicious prosecution claim as Count III in his complaint.  Adjusting the numbering, malicious prosecution

V), and defamation of character in violation of Michigan Comp. Laws § 600.2911 (Count VI).  (ECF No. 1, PageID.7-12).

Defendants filed this motion for summary judgment on August 17, 2023, asking the court to dismiss each of Plaintiff's claims.  (ECF No. 22).  Plaintiff filed his response on September 15, 2023, (ECF No. 26), and Defendants filed a reply on September 28, 2023, (ECF No. 27).  The court held a hearing on this motion on February 21, 2024, and both parties participated in oral argument.  Following the hearing, the court asked the parties to submit supplemental briefs expanding on how commissions are covered by the FLSA, which they filed on February 28, 2024.  (*See* ECF Nos. 28, 29).  Considering all of the relevant arguments and exhibits, the court now **GRANTS** Defendants' motion in part and declines to exercise jurisdiction over the remaining state law claims.

I.     **FACTUAL BACKGROUND**

Plaintiff began working for Defendant Lenox as a backup plumbing and mechanical inspector in approximately 2017 or 2018.  (ECF No. 22-2, PageID.122, Deposition of Timothy Israel) ("When did I first do work? … 2017 or '18").  When the prior lead plumbing and mechanical inspector passed away, Plaintiff became a

---

should be listed as Count IV, abuse of process should be listed as Count V, and defamation of character should be listed as count VI.  (ECF No. 1, PageID.9-11).

permanent inspector for Defendant Lenox in August of 2019.  *Id.*, PageID.123.  As a permanent inspector, Plaintiff was available to be scheduled for inspections between 12:00 pm and 6:00 pm on Tuesdays and Thursdays.  *Id.*, PageID.125 ("Tuesdays and Thursdays were my scheduled days…[g]enerally the hours were between 12:00 and 6:00").  Plaintiff also performed services for several other municipalities on Tuesdays and Thursdays during some of the same hours he was available to be scheduled by Defendant Lenox, as well as on other days of the week.  *See id.*, PageID.147.

The facts relevant to Plaintiff's claims can be divided into three key parts: (1) Plaintiff's allegations that he was underpaid by Defendant Lenox; (2) Plaintiff's allegations that he was terminated in retaliation for raising a complaint about his underpayment; and (3) Plaintiff's allegations that Defendant Grabow filed a false police report against him after he failed to return a laptop computer.

A.    Plaintiff's alleged underpayment

Count I of Plaintiff's case is based on allegations that he would "receive periodic pay from Defendant Lenox without any explanation as to the calculations," and was "[not] provided documents that he could use to verify the accuracy of the amounts being paid."  (ECF No. 1, PageID.2)*.*  Plaintiff claims he was paid by Defendant Lenox in two ways: (1) he received a commission "based

upon the paid plumbing and mechanical permits issued by Defendant Lenox," and

(2) he was paid a "fee for each plumbing and mechanical plan review" he

performed.  *Id.*; *see also* ECF No. 22-2, PageID.161, Plan Review Fee Schedule.

Plaintiff was paid monthly for his plumbing and mechanical inspections and plan

reviews.  (*See, e.g.,* ECF No. 26-8, Israel Paystubs) ("Pay Period: 03/01/20 to

03/31/20;" "Pay Period: 05/01/20 to 05/31/20").  Plaintiff testified that he

received no benefits, raises, vehicle reimbursement, or health insurance from

Defendant Lenox, although they withheld taxes from his paycheck and issued a

W-2 at the end of each year.  (ECF No. 22-2, PageID.132) ("Q. Were you issued W-

2s every year? A. Yes."); (*see also* ECF No. 26-9, W2 forms).

   Beginning in 2020, Plaintiff alleges that he made multiple requests to

Building Department Manager Amy Flood to see a breakdown of the amounts

paid to him and how they were calculated.  (ECF No. 1, PageID.3); (*see also* ECF

No. 22-3, PageID.184, Deposition of Amy Flood) ("Q. Was there a time in 2021

when [Plaintiff] began asking you for backup information with regard to his pay

for plan review and inspections? A. Yes.").  Amy Flood allegedly provided him with

a "minimal number of documents titled 'payroll sheets,'" but these documents

"did not provide the information requested [], nor did they provide the

information necessary for computing the wages, commissions and fees owed."

*Id.* Plaintiff alleges he finally received the documents and information relevant to his wages in September 2021, which revealed that he had been "significantly underpaid for his inspection and plan review work." *Id.* Around this time Plaintiff also requested a meeting to discuss these documents and alleged underpayment, which was held on October 25, 2021. (ECF No. 22-2, PageID.130) ("the purpose of the meeting was to sort through Amy [Flood]'s hocus-pocus on her attempts at giving me information regarding the pay."). This meeting included Plaintiff, Plaintiff's wife,[2] Amy Flood, Dennis Lamieux, LuAnne Kandell, and Neville Nofar, Plaintiff's financial planner. *Id.* Plaintiff testified that this meeting was not successful at resolving his dispute with Defendant Lenox. *Id.* ("To me it was pretty cut and dried that they were refusing to provide, refusing to admit they made mistakes.").

### B.   The Alleged Retaliation

Plaintiff claims he complained about the underpayment to Defendant Lenox's officials, but was met with "hostile, aggressive and angry" emails from Amy Flood. (ECF No. 1, PageID.3). Additionally, several months after Plaintiff first requested information about his compensation, Amy Flood presented a proposal

---

[2] Plaintiff alleges his wife is responsible for "receiving, collecting, and depositing" his wages. (ECF No. 22-2, PageID.134).

to the Lenox Township Board of Trustees asking them to authorize a job posting for a mechanical and plumbing inspector.  *Id.*, PageID.4.  The meeting agenda stated that Board approval was requested for the hiring of an additional plumbing and mechanical inspector "[d]ue to the rapid growth and development of the Township" and because "[t]he current inspectors are quite limited in their time and are unable to make any more time for Lenox Township inspections."  (ECF No. 22-3, PageID.204, Lenox Township Board of Trustees Meeting Agenda for December 6, 2021).  However, Plaintiff argues this explanation was pretext to hire an additional inspector as retaliation for his prior actions.  (ECF No. 1, PageID.4).  Plaintiff argues that, since February 2022, he has not been given any inspection or plan review projects, and Defendants have essentially "terminated [his] employment and/or contract, despite never having communicated this termination to Plaintiff."  *Id.*

In approximately February 2022, all Township inspectors, including Plaintiff, were offered a new Independent Contractor Agreement.  (*See* ECF No. 22-3, PageID.191) ("Q. Now, you mentioned in February of 2022 that there was a request for all of the inspectors to sign an independent contractor agreement, correct?  A. That's correct.").  Defendants argue that not a single inspector was given work until they signed this agreement.  *Id.* ("We were not able to give work

to anybody until they had the substantial liability, they signed the contract, and provided their own insurance.  So I was instructed to not give any of them – none of them were working until there was an agreed – 'til they agreed to the contracts.").  Plaintiff agrees that he received this agreement, but claims he notified Defendant Lenox's representative that he wanted to have his attorney review it for him.  (ECF No. 26, PageID.254) ("Plaintiff had not yet signed the Independent Contractor Agreement because the Agreement was under review by his attorney, which Plaintiff communicated to the Township.").  Both parties agree that Plaintiff never formally accepted the Independent Contractor Agreement.

       C.   <u>The Laptop</u>

As part of his work for Defendant Lenox, Plaintiff was issued a laptop, a Panasonic Toughbook ("the Toughbook"), in December of 2020.  (ECF No. 22-2, PageID.131) ("Q. So you said that the Township gave you – was it a laptop or a Toughbook or is that the same thing?  A. Same thing."); (*see also* ECF No 22-2, PageID.163, Acknowledgement of Receipt of Company Property).  Plaintiff testified that he never used or logged onto the Toughbook, and he stored it in a file cabinet at home in his personal office.  *Id.* PageID.125 ("Lenox Township

issued me one, and upon issuance I had told them that that's not part of my forte, so Dennis insisted I take it, and it sat in my file cabinet.").

In April 2022, Plaintiff alleges he received an email "requesting that he drop off his employer-provided laptop at the Lenox Township Hall for the purpose of 'IT upgrades.'"  (ECF No. 1, PageID.4)*.*  A subsequent email sent by LuAnne Kandell ("Kandell") to Plaintiff requested "the Toughbook assigned to you be returned to Lenox Township by April 14, 2022 so it will be available on the 19th for IT upgrades."  (ECF No. 22-2, PageID.171).  LuAnne Kandell sent another email to Plaintiff on April 18, 2022, which says: "I have not received any information from you regarding my previous message regarding the return on your Toughbook for updates.  Tomorrow morning our IT will be here and they are expecting to update and inspect the Toughbooks…"  *Id.*  Also on April 18, 2022, Dennis LeMieux sent a message to Plaintiff at approximately 1:19 pm stating: "Tim, The township needs the computer back to have IT upgrade it. Dennis Need it 4-19-22."  (ECF No. 26-10, PageID.445, email from Dennis LeMieux).  At 1:49 pm on the same day, Dennis LeMieux sent another email to Plaintiff stating: "Lenox is requesting you return the laptop.  All computers are being returned for programming including mine.  The township needs it back by April 19. Dennis."  (ECF No. 22-2, PageID.172).

On April 26, 2022, Plaintiff received a letter from Albert Addis, an attorney with Michigan Justice, which states, in part: "As you are likely aware, the Township has repeatedly requested the return both [sic] the Township laptop and the Township municipal-building keycard[3] currently in your possession…They must be returned to the Township within fourteen (14) days of the date of this letter." *Id.*, PageID.173.  The letter also clarifies that "[t]he Township also reserves the right to press criminal charges for embezzlement/conversion, theft, and any other applicable crime given the circumstances." *Id.*

When Plaintiff allegedly failed to return the Toughbook to the Township, Defendant Grabow was instructed by Anthony Reeder to contact the Macomb County Sheriff's Office to file a police report.  (ECF No. 22-5, PageID.222) ("I reached out to dispatch asking to have a deputy dispatched to file a police report.").  The police report, dated July 14, 2022, states, in part:

> [ ]
> Mark explained that each of the inspectors/contractors were to review, sign, and return the [Independent Contractor Agreement] to the township by mid-March. Mark stated there was an understanding that if the

---

[3] It is not clear from the pleadings or evidence whether Plaintiff had previously been asked to return the keycard, as prior emails only mention the Toughbook.  Further, Mark Grabow testified that he was not aware of any prior requests for Plaintiff to return a keycard. (*See* ECF No. 22-5, PageID.224) ("Q. Are you aware of anybody ever asking Mr. Israel to return the keycard? A. Not that I'm aware of. Like I said, that would not have been – no, not my – above my paygrade.").

contract went unsigned, employment would be
terminated as the contract is required by the township.

Mark stated there was email correspondence between
[Plaintiff] and township employees regarding the
contract. In one email provided to me the township
accommodated [Plaintiff's] request for a meeting to
address both his and "his attorney's" input, however
[Plaintiff] never arrived for the meeting nor provided a
signed copy of the contract to the township to continue
employment.

Mark stated that after not receiving the signed contract
from [Plaintiff], the township requested he return all
township issued work equipment.
[ ]

Mark stated the township has attempted to contact
[Plaintiff] numerous time's [sic] to return the property,
however [Plaintiff] is unwilling to do so. Mark stated the
simply wished to have the property returned to them
within a week's time, however, if [Plaintiff] was unwilling
to do so, would like to pursue charges.

(ECF No. 22-6, PageID.234, Macomb County Sheriff's Office Case Report).

Plaintiff claims he tried to get in contact with Defendant Lenox's

representative immediately after this report was filed, but his outreach was

ignored.  (ECF No. 1, PageID.5).  Plaintiff testified that he sent his daughter to

return the Toughbook to the Township on July 22, 2022.  (ECF No. 22-2,

PageID.156) ("Q. Did you take your laptop to Michigan Justice, the law firm or did

your wife or did someone on your behalf?  A. Someone on my behalf…My

daughter.").  Michigan Justice acknowledged receipt of the Toughbook on July 22,

2022.  *Id.*, PageID.176.  The Macomb County Sheriff's office allegedly submitted a

Request for Warrant to the Macomb County Prosecutor's Office, who initially

authorized the issuance of such warrant.  (ECF No. 1, PageID.6).  However, after

Plaintiff provided the Sheriff's Office with all the relevant information, they did

not authorize the issuance of a warrant against him.  *Id.*

## II.    STANDARD OF REVIEW

When a party files a motion for summary judgment, it must be granted "if

the movant shows that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A party

asserting that a fact cannot be or is genuinely disputed must support the

assertion by: (A) citing to particular parts of materials in the record . . .; or (B)

showing that the materials cited do not establish the absence or presence of a

genuine dispute, or that an adverse party cannot produce admissible evidence to

support the fact."  Fed. R. Civ. P. 56(c)(1).  The standard for determining whether

summary judgment is appropriate is "whether the evidence presents a sufficient

disagreement to require submission to a jury or whether it is so one-sided that

one party must prevail as a matter of law."  *State Farm Fire & Cas. Co. v.*

*McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 251–52 (1986)).  Furthermore, the evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Where the movant establishes the lack of a genuine issue of material fact, the burden of demonstrating the existence of such an issue then shifts to the non-moving party to come forward with "specific facts showing that there is a genuine issue for trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  That is, the party opposing a motion for summary judgment must make an affirmative showing with proper evidence and to do so must "designate specific facts in affidavits, depositions, or other factual material showing 'evidence on which the jury could reasonably find for the plaintiff.'"  *Brown v. Scott*, 329 F. Supp. 2d 905, 910 (6th Cir. 2004).  In order to fulfill this burden, the non-moving party only needs to demonstrate the minimal standard that a jury could ostensibly find in his favor.  *Anderson*, 477 U.S. at 248; *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).  However, mere allegations or denials in the non-movant's pleadings will not satisfy this burden, nor will a mere scintilla of evidence supporting the non-moving party.  *Anderson*, 477 U.S. at 248, 251.

The court's role is limited to determining whether there is a genuine dispute about a material fact, that is, if the evidence in the case "is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.  Such a determination requires that the court "view the evidence presented through the prism of the substantive evidentiary burden" applicable to the case.  *Id*. at 254.  Thus, if the plaintiff must ultimately prove its case at trial by a preponderance of the evidence, on a motion for summary judgment the court must determine whether a jury could reasonably find that the plaintiff's factual contentions are true by a preponderance of the evidence.  *See id.* at 252-53.  Finally, if the nonmoving party fails to make a sufficient showing on an essential element of its case for which it carries the burden of proof, the movant is entitled to summary judgment.  *Celotex*, 477 U.S. at 323.  The court must construe Rule 56 with due regard not only for the rights of those "asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury," but also for the rights of those "opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis."  *Id*. at 327.

**III.     ANALYSIS**

**A.     FLSA Violations (Counts I, II)**

Plaintiff's complaint first alleges Defendant Lenox violated the FLSA, 29

U.S.C. § 201, *et. seq.*, by failing to pay his earned commissions and fees and by

retaliating against him for complaining about these unpaid wages.  (ECF No. 1,

PageID.7-8).  The FLSA was passed by Congress with "broad remedial intent,"

specifically "to eliminate, as rapidly as practicable, substandard labor conditions

throughout the nation."  *Keller v. Miri Microsystems LLC*, 781 F.3d 799, 806 (6th

Cir. 2015) (citing *Powell v. U.S. Cartridge Co.*, 339 U.S. 497, 509-11 (1950)).  As

part of this goal, the FLSA generally sets a minimum wage and requires the

payment of overtime rates[4] for time worked in excess of statutorily defined

maximum hours.  29 U.S.C. §§ 206(a)(1), 207(a).  Additionally, the FLSA includes

an anti-retaliation provision, which provides that an employer is prohibited from

"discharg[ing] or in any manner discriminat[ing] against [an] employee because

such employee has filed [a] complaint or instituted…any proceeding under [the

FLSA]."  *Adair v. Charter Cnty. of Wayne*, 452 F.3d 482, 489 (6th Cir. 2006); 29

U.S.C. § 215(a)(3).  The FLSA's protections generally only apply to "employees,"

---

[4] Plaintiff concedes he is not claiming any unpaid overtime wages as part of this action.
(ECF No. 26, PageID.269) ("This is not a case involving a claim for overtime pay.").

"[i]ndependent contractors do not enjoy FLSA's protections."  *Id.*  However, even without determining whether Plaintiff was an employee or an independent contractor, Plaintiff's FLSA claims must fail because he has not sufficiently alleged the violation of any section of the FLSA.

>      i.      *Failure to Pay Commissions*

Count I of Plaintiff's complaint argues Defendant Lenox "failed, refused and neglected to pay all commissions and fees owed to Plaintiff, thereby violating the FLSA."  (ECF No. 1, PageID.7).  Under the FLSA, each covered employee must be paid no less than $7.25/hour for the work they complete within a regular workweek.  *See* 29 U.S.C. § 206(a)(1)(C).  While commissions are not specifically included in the language of 29 U.S.C. § 206, the FLSA's minimum wage provisions apply no matter what type of compensation is paid.  The regulations governing the FLSA state:

> The Act's individual employee coverage is not limited to employees working on an hourly wage.  The requirements of section 6 as to minimum wages are that "each" employee described therein shall be paid wages at a rate not less than a specific rate "an hour."  This does not mean that employees cannot paid on a piecework basis or on a salary, commission, or other basis; it merely means that **whatever the basis on which the workers are paid, whether it be monthly, weekly, or on a piecework basis**, they must receive **at least the equivalent of the minimum hourly rate**.

29 C.F.R. § 776.5 (emphasis added).  In practice, this means an employee paid on a commission-only basis, who, by definition, is not being paid hourly for the work they complete, must still receive the equivalent of "an amount of not less than the statutory minimum wage for all hours worked in each workweek." *Marshall v. Allen-Russel Ford., Inc.*, 488 F. Supp. 615, 617 (E.D. Tenn. 1980) (citing Dept. of Labor Field Office Handbook, Section 30b05).  This is calculated by taking an individual's total pay for a pay period and dividing it by the number of hours actually worked during that pay period.[5]  *See Caci v. Wiz of Lake Grove, Inc.*, 267 F. Supp. 2d 297, 299 (E.D.N.Y. 2003) (finding that an individual paid on a sales commission was paid at least the minimum wage for each hour worked, including hours he worked after the store closed where he could not possibly have made any sales, because his total "weekly pay divided by the total hours he worked…yielded an hourly rate exceeding the required minimum wage.").

As discussed above, Plaintiff was not paid on an hourly basis, and instead received "(1) a commission based upon the paid plumbing and mechanical

---

[5] This is similar to how the rate of overtime compensation is calculated for employees paid on commission, consistent with 29 C.F.R. § 778.118.  ("When the commission is paid on a weekly basis…the total is divided by the number of hours worked in the workweek to obtain the employee's regular hourly rate for the particular workweek.").

permits issued by Defendant Lenox and (2) a fee for each plumbing and mechanical plan review." (ECF No. 1, PageID.2). Plaintiff argues he was "significantly underpaid for his inspection and plan review work," and is still owed $16,848.00 for unpaid commissions. *Id.*, PageID.3; ECF No. 28-1, "Wages Owed Pre-February 2022." However, Plaintiff's complaint never alleges he was paid less than the federal minimum wage. Additionally, a review of Plaintiff's paystubs reveals that he typically received compensation well above $7.25/hour based on the number of hours he was working for Defendant Lenox each week. (*See* ECF No. 26-8). Plaintiff did not provide the court with any log or description of his actual hours, but testified that he was generally available to be scheduled by Defendant Lenox on Tuesdays and Thursdays from 12:00 pm to 6:00 pm. (ECF No. 22-2, PageID.125). Even if Plaintiff were to work these hours in full, totaling approximately 12 hours per week or 48 hours per month, compensation at the federal minimum wage of $7.25/hour would equal $348 per month. Plaintiffs' paystubs reveal he was regularly paid well over double this amount. (*See* ECF No. 26-8). Finally, while Plaintiff provided the court with a list of allegedly "unpaid" reviews, it does not list the months in which these reviews were completed, or the number of hours Plaintiff worked on completing them. (ECF No. 28-1). This list also contradicts some of Plaintiff's own testimony. Specifically, Plaintiff

testified that he was not paid for completing an inspection at a "park building

behind the Township Hall," but this project does not appear to be included on the

list, calling into question its accuracy.[6]

While the FLSA requires an employee to be paid "at least the equivalent of

the minimum hourly rate, [$7.25/hour]," it "does not mandate enforcement or

collection for usual or promised wages or commissions in excess of those required

by the FLSA." *Handy Reference Guide to the Fair Labor Standards Act,* at p.1

(Sept. 24, 2015), http://www.dol.gov/whd/regs/compliance/wh1282.pdf; *see also*

*Altamura v. Reliance Commc'ns, LLC*, No. 16-CV-1964 (JS) (AYS), 2023 WL

5843720, at *1 (E.D.N.Y. Sept. 11, 2023) (adopting recommendation to dismiss

FLSA claim, noting "it is undisputed that any claim for failure to pay commissions

is not viable under the FLSA.").  Plaintiff has failed to provide any evidence

suggesting he was paid less than *the equivalent of* $7.25 an hour at any point

during his employment with Defendant Lenox.[7]  Mere assertions that he was not

---

[6] The list of "unpaid reviews" includes SEMCO (a facility located on Gratiot), Taco Bell (a restaurant franchise), High Society and Logicrops ("marijuana facilities," ECF No. 22-3, PageID.189), and Rosseels (a "tractor supply company," ECF No. 22-3, PageID.193).  (ECF No. 28-1).

[7] In his supplemental brief, Plaintiff argues that, "for the hours that Plaintiff worked performing the plan reviews and inspections shown on Exhibit 1, he was paid zero dollars. This is clearly less than the federal minimum wage."  (ECF No. 28, PageID.494).  However, when an employee is paid on a commission basis, they are inherently not being paid by the hour.  The

paid, or was underpaid, for various projects is insufficient to survive a motion for summary judgment.  *Anderson*, 477 U.S. at 248, 251 ("mere allegations or denials in the non-movant's pleadings will not satisfy this burden, nor will a mere scintilla of evidence supporting the non-moving party.").  As such, even viewing the facts in the light most favorable to Plaintiff, he has failed to establish an essential element of his claim: that any portion of the FLSA was violated.  *See Celotex*, 477 U.S. at 323.  Any claims Plaintiff may have for underpayment of his commissions must be determined under state law, not the FLSA.  Defendants are entitled to summary judgment as to Count I.

> ii.     *Count II: Retaliation*

Count II of Plaintiff's complaint argues he "engaged in protected activity under the FLSA when he made complaints to Defendant Lenox regarding his unpaid wages" and "Defendant Lenox took adverse employment action against Plaintiff by eliminating all of his inspection projects, eliminating all of his plan review projects, discharging him, and making a false report of criminal activity

---

U.S. Department of Labor defines a commission as "a sum of money paid to an employee upon completion of a task, usually selling a certain amount of goods or services."  U.S. Dep't. of Labor, *Commissions, https://www.dol.gov/general/topic/wages/commissions.*  The FLSA does not require an employee to be compensated directly for each hour worked when they are being paid under a commission structure.  If this were the case, it would effectively remove any meaningful distinction between compensation on an hourly basis and compensation on a commission basis.

about Plaintiff."  (ECF No. 1, PageID.8).  To establish a prima facie case of retaliation under the FLSA, an employee must show: "(1) he or she engaged in a protected activity under the FLSA; (2) his or her exercise of this right was known by the employer; (3) thereafter, the employer took an employment action adverse to [him]; and (4) there was a causal connection between the protected activity and the adverse employment action."  *Adair*, 452 F.3d at 489 (citing *Williams v. Gen. Motors Corp.*, 187 F.3d 553, 568 (6th Cir. 1999)).  If a plaintiff sufficiently establishes a prima facie case, this "creates a presumption that the employer unlawfully discriminated against the employee."  *Id.* (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993)).  "The burden then shifts to the defendant to establish a legitimate, non-discriminatory reason for the adverse employment action."  *Id.* (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 804 (1973)).  If a defendant meets this burden, the plaintiff "then must prove by a preponderance of the evidence that the defendant's proffered reasons were not its true reasons, but merely a pretext" for retaliation.  *Id.*

Count II of Plaintiff's complaint argues he: (1) engaged in protected activity under the FLSA when he complained to Defendant Lenox's representatives about his unpaid wages, (2) this protected activity was known to Defendant Lenox, (3) Defendant Lenox then took adverse employment action against him by

"eliminating all of his inspection projects, eliminating all of his plan review projects, discharging him and making a false report of criminal activity about Plaintiff," and (4) there is a causal connection between his activity and these adverse employment actions.  (ECF No. 1, PageID.8).

Here, it is not contested that Plaintiff contacted Amy Flood about his alleged underpayment beginning in 2021.  (ECF No. 22-3, PageID.184) ("Q. Was there a time in 2021 when Tim Israel began asking you for backup information with regard to his pay for plan review or inspections? A. Yes.").  However, as discussed above, Plaintiff provides no information suggesting he was being paid less than the statutorily required minimum wage.  The FLSA prohibits retaliation against employees, but only those who assert rights specifically protected by the FLSA.  *See* 29 U.S.C. § 215 (employers cannot "discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter…").  Because Plaintiff never asserted a violation of the FLSA, he could not have engaged in a protected activity under the FLSA.  *See e.g., Dunn v. Sederakis*, 143 F. Supp. 3d 102, 110-11 (S.D.N.Y. 2016) (finding a plaintiff's complaints that she "believed she had not been paid what her employer had promised" was not protected activity under the FLSA because "under settled law,

the FLSA neither converts an employer's contract breach into a violation of federal law, nor generally federalizes disputes between employers and employees."). As such, because Plaintiff has failed to establish an essential element of this claim, Defendants are also entitled to summary judgment as to Count II.

    B.    <u>Remaining State Law Claims (Counts III, IV, V, VI)</u>

Because the court determined that Defendants are entitled to summary judgment as to both of Plaintiff's FLSA claims, the court must next determine whether to exercise supplemental jurisdiction over the remaining state law claims. *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) ("a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendent state-law claims."). Where, as here, "the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice." *Id.*; *see also United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("if the federal claims are dismissed before trial…the state claims should be dismissed as well."). In this case, the court granted summary judgment

and dismissed Plaintiff's only two claims invoking federal law.[8]  Any remaining

employment claims against Defendants are state law matters which should be

pursued, if Plaintiff chooses, in state court.  *Musson Theatrical, Inc. v. Federal

Express Corp.*, 89 F.3d 1244, 1254 (6th Cir. 1996).  The court declines to exercise

supplemental jurisdiction over Counts III-VI and, as such, they are dismissed

without prejudice.

## IV.    CONCLUSION

Plaintiff has failed to establish that any portion of the FLSA has been

violated and, as such, Defendants' motion for summary judgment is **GRANTED** as

to Counts I and II of Plaintiff's complaint.  Because the only claims remaining are

state law claims which the court declines to exercise supplemental jurisdiction

over, Defendants' motion for summary judgment as to Counts III-VI is **DENIED AS

MOOT** and Plaintiff's remaining state law claims are **DISMISSED WITHOUT

PREJUDICE**.  This is a final order and closes this case.

---

[8] The court originally had jurisdiction over this case based on the existence of a federal question, specifically because Plaintiff raised claims under the FLSA.  *See* 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.").  Both Plaintiff and Defendants are citizens of Michigan and, as such, there is no jurisdiction based on diversity of citizenship.  *See* 28 U.S.C. § 1332.

**SO ORDERED**.

Date: March 21, 2024                    <u>s/F. Kay Behm</u>
                                        F. Kay Behm
                                        United States District Judge